## ARONSON v. BALDWIN.

1. AMENDMENT—LIBEL AND SLANDER—DECLARATION.

On the trial of an action for libel, for the publication of an article charging defendant, a sheriff, with drunkenness, dereliction of duty and making an arrest improperly, the court might properly allow plaintiff to amend his declaration by striking out certain of the charges, and basing his action on the remainder, notwithstanding that the defense was prepared to justify as to all the charges; and it was not erroneous to permit the case to proceed after amending the declaration accordingly and after plaintiff's counsel had read the entire statement or libel as published to the jury.

2. LIBEL AND SLANDER—DRUNKENNESS—WORDS SLANDEROUS PER SE.

It was libelous *per se* to charge in a printed article that a county sheriff was drunk while he was performing official duties; if the statement was true the sheriff might be subject to arrest and would be liable to experience public contempt or ridicule.

3. SAME—RETRACTION—NOTICE—DAMAGES.

Although plaintiff's amended declaration counted on certain parts of the libelous publication only, a notice to retract the entire article was properly received in evidence over the objection of the defendant, as the demand for retraction was not invalidated by including portions of the article that plaintiff did not rely upon.

4. WITNESSES — TRIAL— DRUNKENNESS — EVIDENCE— CROSS-EXAMINATION.

On the trial of a libel suit, the court committed error in refusing to require the plaintiff, a sheriff, to answer the interrogation of defendant's attorney whether plaintiff had not frequented a certain saloon and drank there at unlawful times, where the libel had charged plaintiff with drunkenness and dereliction of duty. The defense was entitled to discredit plaintiff by showing his character and antecedents.

Error to Delta; Flannigan, J. Submitted January 8, 1913. (Docket No. 23.) Decided March 26, 1913.

Case by Frank W. Aronson against Francis L. Baldwin for libel. Judgment for plaintiff. Defendant brings error. Reversed.

*A. H. Ryall (C. R. Brown* and *H. J. Rushton,* of counsel), for appellant.

*John Power* and *Cummiskey & Spencer,* for appellee.

BIRD, J. Plaintiff, the sheriff of Delta county, brought this libel suit against the defendant, the editor of the Escanaba Journal, for the publication of the following article on the 3d day of September, 1909:

"*Sheriff Aronson was on a Drunk.*
"*Delta County Officer Celebrated Fair by Spreeing*
and Having Boy Arrested for Speeding
Automobile.

"*Frank W. Aronson, Sheriff of Delta County, was drunk last Thursday evening; just a plain common D-r-u-n-k. He was in splendid condition to see things.* And he saw, or claims he saw, Willie Richer, son of Thomas Richer, proprietor of City Livery, running his automobile, in which the editor of the Journal was a passenger, faster than the peace, dignity and safety of the public will justify. Aronson was down at Jake Miller's when he saw things. Jake is another of the city beauts. He violates the law seven days in the week and unnumbered times every day. But Sheriff Aronson never sees this. He has a decidedly friendly feeling for Jake and others of the same stripes. But he saw Willie Richer speeding the automobile. And Baldwin was in the car. Good chance. The sidewalk is pretty wide, but it was none too wide for Aronson as he hurried down to Mr. Richer's barn to tell him that he was going to arrest the boy. *The arrest was made and Mr. Richer paid $9.25 fine and costs. And why did he pay this fine and costs? Just because the automobile was going faster than it should have gone? No. It was because Baldwin was in the car.* The public undoubtedly knows that Aronson doesn't love the writer. We have had too much to say about the

disgraceful manner in which he performs, or rather, fails to perform, his official duties.

"Aronson hangs around saloons after hours and on Sundays: *He gambles* in them; drinks in them. He has been in places which are not mentioned in polite society, and when he wasn't on official business, either.

"If the Journal should attempt to lay bare the record of this man Aronson since he became sheriff of Delta county, this paper would be refused admission to the mails.

"And that is the kind of a man who punishes a boy because he chances to have the editor of the Journal as a passenger!

"And there isn't a day goes by that nearly every car driver in the city could not be arrested for speeding!

"But the circumstances under which Willie Richer was running the automobile makes the arrest all the more reprehensible. The car had six or seven minutes to run from the Ludington hotel to the Northwestern passenger depot, where the writer was to meet some of the speakers and special guests of the city. No one was on lower Ludington street, and when the car got farther up the street it was run very slow. The driver was exceedingly careful.

*"But he has to be punished, not for fast running, but because he had the editor of the Journal as a passenger.*

*"And his arrest was caused by a drunken sheriff.*

"What do you think about it, people of Delta county?

"We do not wish to be understood as upholding fast running of automobiles. If Sheriff Aronson will begin an honest and impartial crusade against fast auto driving, he will have done a commendable thing. The Journal has said before, and it repeats, someone will pay the penalty with his life for the reckless manner in which autos are driven about the city.

"The Journal believes in the enforcement of all law.

"But we don't believe in punishing a boy because he is so unfortunate as to be seen with the writer."

1. Upon the trial, after the plaintiff had offered the article and it had been received in evidence and read to the jury, he asked and received permission of

the court to amend his declaration by striking out all of the article save those portions which appear in italics. The defendant made vigorous objection to this on the ground that he had pleaded justification and was prepared to justify as to the entire article which had been counted on in the declaration, and he argued that inasmuch as plaintiff had received the benefit of the article before the jury he ought to be allowed to justify the article in its entirety.

The plaintiff was charged in the article with several distinct offenses and had he, in the first instance, selected the charges embraced within the italics and based his libel suit thereon no reasonable objection could have been urged against it. If such a course would have been proper at the outset, it follows that it was proper to bring the pleadings to that position by amendment. Indeed, if this were not the rule, one might combine a false charge with a truthful one and afterwards show the truthful one in justification of the false one. The case of *Bathrick* v. *Tribune Co.*, 50 Mich. 629 (16 N. W. 172, 45 Am. Rep. 63), is cited in support of defendant's contention that the amendment was improper. In that case an attempt was made to restrict the justification by the innuendo, while in this case the scope of the justification was narrowed by means of an amendment to the declaration. The course pursued by plaintiff in this case seems to be approved in that opinion wherein it says,

"That if he proposed to narrow the controversy to a single charge he should have complained only of that portion of the article which made it, instead of putting the whole before the jury and counting upon the whole as damaging."

We are of the opinion that the trial court committed no error in allowing the amendment, but we are in serious doubt of the propriety of allowing the case to proceed after the entire article had been read to the jury. The trial court attempted to remove from their

minds any bias by instructing them to forget the portions of the article which the amendment had eliminated, but when the severity of the charges is considered, such an instruction would be of little value. Inasmuch, however, as defendant made no request for a postponement of the trial as a condition for allowing the amendment, no error should be predicated thereon.

2. It is further insisted by the defendant that the language relied upon, which appears in italics, is not libelous *per se.* The language used charges plaintiff with being drunk in a public place while attending to his official duties. This charge, if true, would have made him liable to arrest and would have exposed him to the ridicule and contempt of the people of his county. Such a charge is clearly libelous *per se.* 25 Cyc. p. 346.

3. Before suit defendant was served with a notice to retract the article. This he refused to do. After the amendment was made, eliminating portions of the article, it was contended by defendant that the notice to retract was inadmissible because it demanded a retraction of the whole article. The trial court overruled the objection and properly so. If a demand was made to retract the entire article, it must have included the portions finally relied upon. The fact that plaintiff demanded a retraction of more than he was entitled to would not invalidate the notice as to portions to which he was entitled.

4. The plaintiff was asked upon cross-examination the following question:

"Did you during the year 1908 and up to May, 1909, stay in Jake Miller's saloon frequently, once or twice or more a week, until one or two o'clock in the morning, and drinking in there?"

Several questions of like character were asked and all of them excluded on the ground that they were in-

competent. In this ruling we think the trial court was in error. The plaintiff offered himself as a witness and it was the right of defendant on cross-examination to show the kind of a man he was. If he could show by plantiff himself that he was in saloons frequently after the statutory hours, drinking, it would certainly have a tendency to discredit him with the ,jury. The extent of the right of cross-examination of a plaintiff in a slander case was raised in *Ritchie* v. *Stenius*, 73 Mich. 563 (41 N. W. 687), and it was there said:

"The jury had a right to be informed of the character and antecedents of the witness, whose testimony they were called upon to weigh. While it is true the rule does not allow an attack upon character in this class of cases by specific acts, yet, when the party is called as a witness in his own behalf, he stands to the case like any other witness, and subject to the same rules of cross-examination as any other witness, and this was a proper subject of cross-examination. Whatever his answers may have been to these inquiries, the defendant would undoubtedly have been bound by them, but as a matter of cross-examination it was proper."

See *Georgia* v. *Bond*, 114 Mich. 196 (72 N. W. 232).

The deprivation of this right of cross-examination was evidently harmful to defendant's case, and for this reason the judgment must be reversed and a new trial granted.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.