**Barbara COLLINS, Plaintiff,**

v.

**RETAIL CREDIT COMPANY, Defendant.**

No. 3283.

United States District Court, E. D. Michigan, N. D.

Jan. 12, 1976.

Forrest T. Walpole, Caro, Mich., for plaintiff.

Smith & Brooker, P. C., Richard G. Smith, Bay City, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

The instant novel action arose from the filing of a four-count complaint which was amended on November 11, 1974. The first amended complaint alleged two separate federal claims. The first claim was for wilful noncompliance with certain procedural directives of the Fair Credit Reporting Act (15 U.S.C. § 1681). The second count alleged negligent non-compliance with the same provisions of the above mentioned Act. The complaint also contained two ancillary claims of common law libel and invasion of privacy. The basic facts may be summarized as follows.

Defendant caused a substantially untrue investigative consumer report to be prepared by its agents on plaintiff who was then seeking new less expensive automobile insurance coverage. When plaintiff was denied new coverage, she became aware for the first time that a credit report had been prepared on her and that she had a right to see the same. Subsequently, plaintiff met with an agent of defendant and requested to see the report. A male friend accompanied plaintiff, but the agent of defendant refused this second party admittance into the inner office where the report was disclosed. The report was only partially disclosed to plaintiff at this time. Only after plaintiff's existing automobile insurance coverage was cancelled would she see the entire contents of the report.

Although plaintiff only had part of the report disclosed, she believed it to be untrue and wrote a rebuttal statement which was attached to the report. This report and statement were placed in defendant's file and was later sent to plaintiff's existing insurance carrier which led to the above mentioned cancellation. It was not until later, upon disclosure from a third party, that plaintiff was permitted to handle the entire report and read for herself all of the statements regarding her alleged excessive drinking habits and alleged instances of low moral character.

At the initial disclosure, defendant's agent chose not to allow plaintiff to take possession of the report nor allow her to read for herself the statements made in the report. Instead, the agent selected portions from the report that he believed plaintiff should know about. Due to this action, the rebuttal statement did not touch on some of the statements in the report which were considered to be at least as untrue and as derogatory as those statements which were initially disclosed. Also, defendant's agent chose not to reinvestigate the objectionable matter or to further verify the contents of the report.

Suit was brought pursuant to the Fair Credit Reporting Act, Sections 607, 609, 610, 611, 616, and 617; the basic complaints being that defendant wilfully and

negligently failed to follow reasonable investigation procedures to assure accuracy in its reports; failed to reinvestigate the items objected to in the report by plaintiff; failed to fully describe the report upon request; and failed to allow plaintiff to be accompanied by another person when the report was disclosed.

At trial the plaintiff withdrew her invasion of privacy claim and proceeded on the remaining three counts. The plaintiff established sufficient evidence to have the three issues submitted to the jury for a decision. The jury found that defendant had wilfully and negligently failed to comply with one or more of the above provisions of the Fair Credit Reporting Act and that the defendant acted with malice as defined in the Court's instructions when it prepared a substantially untrue credit report. An amount of $21,750.00 in actual damages and $300,000.00 in punitive damages was awarded plaintiff by the jury.

Subsequent to trial, on March 7, 1975, defendant filed numerous motions which are as follows: Motion for Judgment Notwithstanding Verdict or, in the Alternative, for New Trial; Motion to Set Aside Jury's Answers to Special Interrogatories; Motion for Stay of Execution of Judgment; Motion to Correct Clerical Mistake in Judgment; and Motion for Evidentiary Hearing.

On March 26, 1975 plaintiff's brief in opposition to the above motions was filed with the Court. Subsequently, supplemental memoranda was filed on various legal issues.

To date the Court has granted defendant's motion for evidentiary hearing, stay of execution of judgment and correction of clerical mistake in judgment.

In the combined motion for judgment notwithstanding the verdict or for a new trial and motion to set aside jury's answers to special interrogatories, the defendant lists many assignments of error. Although there are numerous assignments of error alleged by defendant, the Court believes that the assignments of error fall into one or more of four general categories.

The first category consists of all assignments of error relating to the issue of the deprivation of defendant's right to a fair and impartial trial. (No. 11 of defendant's assignments of error.)

The second category consists of all assignments of error relating to the issue of erroneous evidentiary rulings by the Court that allegedly prejudiced the defendant during trial. (Nos. 12 and 13 of defendant's assignments of error.)

The third category consists of all assignments of error relating to the issue of insufficient evidence to support the jury's verdict. (Nos. 1, 2, 3, 4, 5, 7, 8, 9, 16, 17, 18, 19, 20, and 21 of defendant's assignments of error.)

The last category consists of all assignments of error relating to the issue of damages, both actual and punitive. (Nos. 5, 6, 10, 14, and 15 of defendant's assignments of error.)

The Court realizes that the third and fourth categories overlap somewhat. Also, each general category or issue necessarily contains various sub-issues as will be seen by the discussion below.

## I.

One of the bases upon which defendant relies in moving for a new trial is that it was allegedly denied its constitutional right to a fair and impartial trial by the failure of a juror to answer fully and truthfully the questions propounded by counsel and the Court on voir dire examination, thus denying defendant's counsel the statutory right to challenge a juror for cause or otherwise.

Specifically, defendant claims that juror Robert E. McCoy failed to disclose his relationship to it. Certain questions were answered negatively by McCoy upon voir dire, among them the following:

"If you were one of the parties in this case, do you know of any reason why you would not be content to have it tried by someone in your frame of mind?

"Is there any reason . . . why any of you don't feel you are able to

render a fair and impartial verdict in this particular case?

"Are there any of you who have had any dealings, briefly or otherwise, with Retail Credit Company?

"Do any members of the jury have any prejudices at all against credit reporting agencies or their investigators or employees?

"Have any of you members of this jury ever had a controversy with any merchant, insurance company application, or credit bureau or a company concerning your credit standing?"

Defense counsel stated in the motion that he relied upon the negative responses to those voir dire questions which indicated to him that none of the jurors had any contact with defendant or similar businesses through the trial of this case. However, counsel searched the records of his client, and discovered certain records indicating that Juror McCoy had registered a complaint regarding defendant's services prior to August 21, 1974. It was concluded by counsel that Juror McCoy had not answered the voir dire questions truthfully.

This Court, being greatly concerned with defendant's allegations, ordered that an evidentiary hearing be held to determine their validity. Having completed the taking of much testimony, as well as reviewing numerous records and documents, it is our conclusion that Juror McCoy did not lie on voir dire, that he in fact made no complaint to defendant or any similar company, and was not prejudiced against defendant.

Robert McCoy was employed until the fall of 1974 as the general manager of the Vestaberg Silo Company in Vestaberg, Michigan. The company experienced financial difficulties during 1974, and ultimately went out of business in December. Prior to that time, the owner of the business, Ross Troop, decided that McCoy, a longtime and loyal employee, deserved some kind of pension. It was further thought that McCoy's skills were irreplaceable, and that key-man insurance on him was desirable. Both objectives could be satisfied by a properly tailored life insurance program, and thus Mr. Troop entered into discussions with agents of the Alexander Hamilton Life Insurance Company.

On January 3, 1974, McCoy signed an application for life insurance and took a physical examination on January 7, 1974. The policy was subsequently issued and was paid through 1974. Retail Credit prepared a Life Report and Business Address Report in connection with the policy. Apparently, due to financial problems, the employer could not continue the payments on the policy, and it lapsed.

On July 20, 1974, a second life insurance application was made out and signed by Mr. McCoy. Another physical examination was made which revealed that McCoy was diabetic, although it appears that McCoy first became aware of this problem when he was examined for the original policy. Defendant has opined that McCoy was bitter towards it for any role it may have played in causing this information to be made available to John Hancock Life. The Court found no evidence to support such a theory. The policy was ultimately issued at a higher rate and again, due to financial problems of the employer, lapsed.

In connection with the second policy, an agent of defendant went to the McCoy home in Alma, Michigan, to interview the applicant on July 26, 1974. The agent, Linda Parks testified that she had an uneventful interview with Mrs. McCoy after identifying herself as an employee of Retail Credit. Although Mrs. McCoy testified that she and her husband were aware of the initial activity regarding the life insurance, she could not remember Miss Parks or anyone else coming to her house to conduct a credit check. She did not make any complaints regarding the insurance or related activities. She did not tell her husband about any credit checks or home visits and his testimony supports this. The Court believes that a visit was paid to the McCoy home, but that Mr. McCoy had no knowledge of it at the time of trial. He there-

fore knew nothing of Retail Credit's role in the life insurance application which had been made.

Daniel Legavitz, another Retail Credit investigator, was assigned the job of making a Business Address Report on the Vestaberg Silo Company. The initial report, done in January, 1974, was done by phone. However, Legavitz visited the company on August 5, 1974. He talked to a "secretary" about the company's financial situation, as there were no officers present. It was his belief that he identified himself as a Retail Credit Employee.

Kenneth Torgerson is a General Agent for Alexander Hamilton Life. He was the agent who wrote the policies in evidence herein, and dealt with Ross Troop on several occasions at the Vestaberg Silo Company. On one visit to the company, he received a complaint from Hazel Fitzpatrick, a bookkeeper and secretary to Mr. Troop, about a man who had talked to her about the company's finances. Torgerson informed the main office of this complaint, talking to a Jim St. Louis by phone. In turn, Mr. Norman Wiest, Director of Underwriting, received a memorandum from St. Louis, which stated that a "client" had complained "about the Retail Credit inspection which was ordered . . ." (Defendant's Exhibit E-8-G) In turn, Wiest wrote to Dee Posey, District Sales Manager of Retail Credit, that "Mr. Robert E. McCoy . . . complained the inspector (a young man) asked many unnecessary questions and Mr. McCoy refused to answer many of the questions." (Defendant's Exhibit E-8-F) Upon examination at the evidentiary hearing, Mr. Wiest admitted that he had erroneously assumed that the complaint had come from Mr. McCoy.

■ The conclusion is merited by overwhelming evidence that Juror McCoy did not know that Hazel Fitzpatrick had complained to Mr. Torgerson or even knew that one of defendant's investigators had visited his employer. Defendant has attempted to show that McCoy was bitter over losing a substantial bene-

fit and blamed it upon defendant. On the contrary, it appears that McCoy was unaware of almost all of the details and activities concerning the life insurance. He did not know of defendant's role and did not blame it or John Hancock Life for the fact that he had lost any benefit from the policies. Upon examination of the voir dire questions, therefore, it is the belief of this Court that Robert E. McCoy answered the questions put to him truthfully and that the defendant was not prejudiced by the answers of Mr. McCoy or any other juror.

The Court finds no error here.

## II.

The defendant next contends that it was prejudiced at trial by various erroneous evidentiary rulings made by the Court.

At trial, the defendant offered to show, through various witnesses certain specific instances of conduct which occurred subsequent to the date of the violations of the Fair Credit Reporting Act and the libel as alleged in plaintiff's complaint. The Court denied the defendant the opportunity to present the above evidence but an offer of proof was taken outside the hearing of the jury to preserve the record.

■ In this motion for a new trial, defendant asserts that it was severely handicapped in not being able to demonstrate to the jury the character of the plaintiff through the testimony of these witnesses. This testimony should have been received for all purposes including that if plaintiff's reputation is tarnished, it has been due to her own activities and not those of the defendant and that of the mitigation of future damages. It was pointed out to the Court that Rule 405(b) of the proposed Federal Rules of Evidence would allow the introduction of proof of specific instances of conduct of an individual whose character is an essential element of the claim set forth in the complaint.

At the time of trial, the Court was aware of the fact that Rule 405(b) was

still in its proposed state. Not being effective until July, 1975, the Court chose not to rely on Rule 405(b) when it restricted defendant's proofs.

The main concern of the Court was not that the method of proof was specific acts of plaintiff but that such specific acts occurred subsequent to October, 1972. Relevancy was the issue before the Court.

It is clear that the modern common law approach is to allow into evidence specific instances of conduct when character is at issue. McCormick § 153. However, this approach recognizes that this method of proof possesses the greatest capacity to arouse prejudice, to confuse, to surprise and to consume time. Obviously, the Court was faced with the problems of balancing the relevancy of subsequent specific acts against the prejudice to the plaintiff. After a careful analysis of the situation the Court struck a balance in favor of excluding the subsequent specific acts. 53 C.J.S. Libel and Slander § 210; 32 C.J.S. Evidence § 434b; *Aronson v. Baldwin*, 178 Mich. 565, 570, 146 N.W. 206 (1914).

Even though defendant attempted to offer the specific subsequent acts for other purposes, in order to show mitigation of damages, lack of proximate cause or impeachment credibility, the Court deemed this to be insufficient grounds to admit the offered proofs. Even if the substance of the offered proofs was deemed admissible, the proper mode for their admission would be testimony of general reputation and not specific acts. *Wells v. Toogood,* 165 Mich. 677, 680, 131 N.W. 124 (1911).

██ Defendant also assigns error to the admission of exhibits reflecting its net worth and economic condition. Due to the issue of punitive damages, the Court found that such evidence was relevant and therefore admissible. *MacRae v. Afro-American Co.,* 274 F.2d 287 (CA 3, 1960). See also *Thomas v. E. J. Korvette Inc.,* 329 F.Supp. 1163, 1169–1170 (D.Pa.1971), reversed on other grounds. 476 F.2d 471 (CA 3, 1973); 53 C.J.S. Libel and Slander § 266; 50 Am.Jur.2d Libel and Slander § 475.

### III.

Defendant argues in a majority of the above listed assignments of error that the general and special verdicts of the jury were not supported by sufficient evidence.

In the opinion of the Court, plaintiff presented credible evidence on each element of her claim, both under the Fair Credit Reporting Act and under the common law libel as follows:

(a) Defendant's haphazard investigation procedures, its emphasis on high volume, and pressure to report derogatory information.

(b) Defendant's employee Mr. Faust, admitted failing to disclose to plaintiff the nature and substance of all information in her file when she demanded disclosure on November 6, 1972.

(c) Testimony showed that defendant refused to permit plaintiff to be accompanied by any person of her choosing when she requested disclosure.

(d) No reinvestigation was made even though plaintiff requested reinvestigation.

(e) Defendant published untruthful statements about plaintiff which taken in their ordinary, natural and popular sense, adversely affected her reputation by tending to hold her up to contempt and shame.

(f) Defendant's procedures and techniques in investigating, disclosing, and reporting were inexact and indicated a reckless disregard and indifference for the accuracy of the accusations contained in the report.

(g) Defendant's failure to disclose the nature and substance of all the information in the report was done knowingly.

(h) Defendant's failure to reinvestigate after being informed of plaintiff's dispute was done knowingly and wilfully.

■ Along with the credibility of the witnesses and the inferences that could be drawn from the direct testimony and exhibits, there appears to be a sufficient basis in the record for the jury to find in favor of the plaintiff on both of her claims.

### IV.

Next, defendant asserts that it is entitled to a new trial or at the least a remittitur on the amount of damages for the reason that the compensatory and/or punitive damages awarded to plaintiff by the jury are excessive.

■ Based on the evidence in the record, the actual past, present and future damages awarded to plaintiff by the jury for loss of reputation, embarrassment and humiliation were adequate and not excessive. The amount of money to be awarded for the above mentioned elements of damage cannot be proved in a precise dollar amount. The law leaves such an amount to the jury's sound discretion. Under the circumstances, the Court will not impose its judgment and adjust the dollar amount the jurors have decided upon to compensate plaintiff. Certainly, a libel per se against a young female which clouds her morality and other intangible elements of her reputation has many subtle and indirect adverse effects upon her personal, social and economic life which a jury may very well recognize and give compensation for.

■ Although defendant objected to the Court giving an instruction on future damages to the jury, such an instruction was given, nevertheless, due to the testimony of plaintiff as to her continuing mental anguish resulting from defendant's acts. Loss of reputation could be inferred from the nature of the libel and the other evidence in the record, and such a loss being of a continuing nature would allow an award for future damages to be included in the actual damages verdict. The record contains sufficient evidence to permit plaintiff for the first time at trial to pray for future damage and to have that issue presented to the jury for their consideration. See Rule *15(b)* F.R.Civ.P.

Before the issue of excessive punitive damages may be decided, the Court must first answer defendant's contention that the Court and not the jury was the proper entity to decide the issue of punitive damages.

It has been the position of the defendant throughout these proceedings that under the Fair Credit Reporting Act, 15 U.S.C. § 1681n, it is within the exclusive province of the Court to establish the amount of punitive damages sustained by the proofs. The above statute states:

*"Civil liability for wilful non-compliance:*

"Any consumer reporting agency or user of information which wilfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) such amount of punitive damages *as the court may allow;* and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys' fees as determined by the court." (emphasis added)

The defendant argues that subsection (2) creates the statutory duty for the Court to fix the amount of punitive damages and that the decision of the Court to submit the issue of punitive damages under the Fair Credit Reporting Act to the jury was prejudicial error.

Having reviewed the congressional history of the above mentioned act and finding it to be inconclusive on this point and not having the benefit of prior judicial interpretations of this relatively recent enactment, the Court finds it necessary to rely upon reason and practicality when now rendering its first impression opinion as to this novel question.

At the trial of this cause, the Court was faced with a bifurcated complaint, alleging common law libel and wilful[1] non-compliance with various sections of the Fair Credit Reporting Act. Under the libel claim, once plaintiff avoided a directed verdict against her as she did here, the issue of punitive damages had to be submitted to the jury. Since the trial was one by jury, the Court could not impose upon the jury's province as the finders of fact and hold back from the jury the remainder of plaintiff's lawsuit regarding the wilful non-compliance claim. Therefore, both matters were submitted to the jury for their determination.

To avoid possible inconsistent verdicts and unworkable procedures, the Court decided not to divide the initial determination between the jury and the Court. It appeared far more reasonable to have the entire case submitted to the designated finders of fact for a determination on whether to grant punitive damages and allow the jury to decide the amount of such damages. If the jury's initial determination was excessive, then the Court could always subject the excessive amount to judicial review. Rule 59, F.R. Civ.P.

There now appears a situation where the Court is moved in the alternative to a new trial to review the jury's verdict and grant a remittitur in favor of the defendant. Whether the Court reviews the jury's verdict pursuant to Rule 59 of the Federal Rules of Civil Procedure or reviews the verdict pursuant to Title 15, United States Code, Section 1681n(2), the review is the same and the congressional intent to avoid verdicts based on passion of a lay jury is fulfilled. The language "as the Court may allow" seems only to be the formal codification and reiteration of the Court's duty to review excessive verdicts and to attempt to eliminate from the jury system the emotion and prejudice that may exist. With this interpretation of the law, the only difference between the defendant's approach and the Court's present procedure for fulfilling the congressional intent is that the latter is more practical and further allows the Court to use the jury as an advisor and an indicator of social outrage while avoiding judicial intrusion into the jury's duties.

A separate finding by the Court as to what amount of punitive damages it "may allow" for wilful non-compliance of the Fair Credit Reporting Act is not contemplated in the above interpretation of the law. Concurrence with the verdict with entry of judgment or the granting of a new trial or in the alternative remittitur would be sufficient to indicate what the Court "may allow."

Now that the Court has denied defendant's motion for a complete new trial and further believes that it acted correctly when submitting the issue of punitive damages for wilful non-compliance to the jury, there now needs to be a determination of whether the amount awarded in punitive damages by the jury is excessive.

Defendant moves in the alternative for a new trial or remittitur. Rule 59 of the Federal Rules of Civil Procedure provides for judicial review of excessive jury verdicts. The Court has previously denied the motion for a new trial for it found sufficient evidence to support a finding of common law libel and negligent and wilful non-compliance with specific sections of the Fair Credit Reporting Act. Although the record does establish wilful and reckless wrongdoing on the part of the defendant, the evidence is not such to support the present jury award of Three Hundred Thousand ($300,000.00) Dollars. The general verdict and the specific findings of wilful non-compliance as well as publication of

---

1. The complaint also alleged negligent non-compliance with the Fair Credit Reporting Act. However, such violations, even if proved, do not allow for the assessment of punitive damages. Title 15, U.S.C. § 1681o. Therefore, this segment of plaintiff's complaint is irrelevant to the court's discussion relating to the punitive damage determination.

a credit report that was not substantially true is based on sufficient evidence and reason and was not the result of passion and prejudice. The plaintiff produced at trial sufficient evidence as outlined above in the court's discussion in denying the defendant's motions for a new trial and/or judgment notwithstanding the verdict to support a verdict in her favor on both the libel and the wilful non-compliance claims.

 However, it is the opinion of this Court that the verdict is larger in amount than it justly ought to be. It is the duty of the Court to keep the verdict for punitive damages within reasonable bounds considering the deterrent purpose to be achieved, as well as the corporate defendant's reckless indifference to the plaintiff's rights. In observance of such duty this Court concludes that the award for punitive damages is excessive and remittitur is proper. Therefore, it is the Court's opinion that the maximum sum for punitive damages that should have been awarded against defendant Retail Credit Company should be Fifty Thousand ($50,000.00) Dollars. See *Butts v. Curtis Publishing Company,* 225 F.Supp. 916, 920 (N.D.Ga.1964), *aff'd, Curtis Publishing Company v. Butts,* 351 F.2d 702, 717–719 (CA 5, 1965); aff'd on other grounds; *Curtis Publishing Company v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

 Although constitutional objections have been raised, it is now settled that a trial court which deems a jury's award of damages excessive may order the plaintiff to remit a portion of the verdict. *Manning v. Altec, Inc.,* 488 F.2d 127, 130 (CA 6, 1973).

 Plaintiff may choose to remit "absolutely" all but $50,000 of the punitive damage award and thereby lose her right to appeal or cross appeal. *Terrill v. Schultz,* 365 Mich. 484, 486, 113 N.W.2d 780 (1962); *Fulton v. Ewing,* 336 Mich. 51, 58 (1953); M.L.P. Appeal § 54.

 However, plaintiff may decide to remit all but $50,000 of the punitive damage award but do so under protest and thereby preserve its right to appeal or cross appeal. The above Michigan Supreme Court case, *Fulton v. Ewing,* seems to indicate that the appeal was lost because the remittitur was absolute rather than conditional or made under protest. Payment under protest would seem to preserve plaintiff's rights to appeal or cross appeal. See *Mooney v. Henderson Portion Pack Co.,* 334 F.2d 7 (CA 6, 1964). Also, the submission of a conditioned remittitur would allow plaintiff to preserve her rights to appeal or cross appeal. M.L.P. Appeal § 54. Although the Court agrees with one legal scholar in this area that it is unwise to look to state law, the Michigan law would allow plaintiff to proceed to appeal if the remittitur is paid under protest. See Wright and Miller, Federal Practice and Procedure: Civil § 2815.

 If the present case may be distinguished from the *Mooney* case due to federal statutory jurisdiction, the rule now developed in the Fifth Circuit that a plaintiff who accepts a remittitur under protest and who does not enjoy the fruits of the original judgment may appeal and challenge the requirement of the remittitur is the better rule to follow. *Gilbert v. St. Louis-San Francisco RR Co.,* 514 F.2d 1277, 1280 (CA 5, 1975). See Wright and Miller, Federal Practice and Procedure: Civil § 2815, note 10.

 This Court has the right to suggest and approve a remittitur in lieu of granting a new trial on the issue of damages only. Technically, a remittitur gives the plaintiff a choice which gives plaintiff the option of a new trial. Such an option is really without much significance. An order of remittitur is a judicial determination that the verdict is excessive as a matter of law. *Banks v. Chicago Grain Trimmers,* 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968). The reality is that if there is a verdict for the plaintiff upon retrial, it cannot from a practical standpoint, be expected to be sustained in an amount previously deemed excessive. *Nelson v. Keefer,* 451 F.2d 289, 296 (CA 3, 1971).

██ For the reasons seen by the Fifth Circuit Court of Appeals in the *Curtis* case, *supra*, to grant a new trial here would be no real solution. On a retrial, the judge could not instruct the next jury as to the dollar maximum of the verdict. The next jury would again only have unavoidably vague legal standards to measure the amount of damages. The trial judge, on the second trial, would then be forced to repeat the process of determining if the verdict is excessive as a matter of law. Although this Court may be reluctant to pronounce excessive a verdict rendered by two different juries that they thought proper from the evidence, this Court's analysis of the same evidence may very well require a second finding of excessiveness. If as urged by this defendant, the determination by the judge that the amount of the verdict is too much, necessarily means a new trial, it is quite possible that this case will never end.

Under the circumstances, a new trial at this point would be an unrealistic procedure. Not having definite answers to the novel legal questions raised by the parties regarding whether the court or the jury must initially decide the amount of punitive damages for wilful non-compliance with the specific provisions of the Fair Credit Reporting Act, another trial again with the jury deciding punitive damages may prove to be a waste of time for the Court and all others concerned in the case.

### V.

On March 26, 1975 counsel for plaintiff filed a motion praying for costs of the action, together with reasonable attorneys' fees.

██ A consumer who is successful in an action to enforce liability under either section 616 or 617 of the Fair Credit Reporting Act (15 U.S.C. § 1681n and (*o*)) is entitled to the costs of the action as well as reasonable attorneys' fees as may be determined by the Court.

Before the Court details the reasons for granting substantial attorney fees in this matter, it would like to commend counsel for both parties for the fine effort they made, for such effort has been the court's only consolation in groping with the novel issues raised in this case.

Before the value of the attorneys' services can be ascertained, the Court must determine just what those services were. At a motion hearing, the attorneys for both parties agreed that plaintiff's counsel could submit a detailed list of services rendered, and the hours spent rather than waste the Court's time in an evidentiary hearing. Subsequently, plaintiff's attorneys submitted in separate affidavits, a list of services rendered and the hours spent by them preparing their case.

Rather than list again that which is contained in the above mentioned affidavits, the Court incorporates by reference the contents of said affidavits into its determination of reasonable attorneys' fees. With this information, the Court has a factual basis upon which to determine how many hours were devoted to various services for which compensation is now sought.

The Court finds that together, plaintiff's counsel spent 470 hours in preparing this case. Conferences, letter writing, discovery, legal research, drafting of pleadings, amendments of same, pre-trial motion hearings, travel, trial brief, jury instructions and much more was done by plaintiff's attorneys.

██ Having first considered the hours spent and the services performed, it is now necessary to place an hourly value on those services. Not all the hours listed in the affidavits can be considered for the plaintiff's interest alone. Some time was spent in the education of counsel to the novel issues raised by the complaint. Secondly, not all services performed may be billed for at the same rate, for some services were performed in court and some were not. Hours spent traveling which were considerable cannot be worth the same as hours spent in legal research, discovery or trial preparation. Thirdly, the hours spent by tri-

al counsel Walpole are worth more than those hours spent by his associate and co-counsel. Based on the above factors, the Court finds the reasonable hourly rate for traveling by both attorneys is $15.00. The out of court time spent in conferences, discovery, letter writing, trial preparation, and legal research, etc. by trial counsel Walpole is worth $45.00 per hour and his in-court time is worth $60.00 per hour. Co-counsel's out of court time is worth $30.00 per hour and his in-court time is worth $40.00 per hour. Based on this fee schedule, plaintiff's attorneys together are entitled to approximately Twenty One Thousand ($21,000.00) Dollars.

The Court having considered the nature of the questions involved, their novelty and difficulty, the high quality of work shown by the record to have been done by the attorneys, the amount recovered in the controversy considering the proposed remittitur, the worthiness and great experience of defense counsel as an opponent, the general conditions of the private contingency arrangements and otherwise being fully advised in the premises, finds that the $21,000.00 amount is reasonable.

■ Besides attorneys' fees, the plaintiff's attorneys have submitted a proposed bill for additional costs to be taxed. Defense counsel agrees with the amount of costs except for the cost of a transcript of three trial witnesses. Having reviewed the bill of costs, the Court finds that said costs are allowable with the exception of the transcript costs objected to by defense counsel. See Taxation of Costs in United States District Courts. 37 F.R.D. 481 (1965); *Stallo v. Wagner*, 2 Cir., 245 F. 636 (1917); *Mercon Corp. v. Goodyear Tire & Rubber Co.*, 16 F.R.Serv.2d 1210 (1972).

All other issues raised by defendant having been considered by the Court are found to be without merit and warrant no further comment by the Court. See *The Consumer's Guide to Litigatory Remedies Under the Fair Credit Reporting Act; Valparaiso University Law Review* (1974) Volume 8, p. 375; *The Future of Common Law Libel Actions Under the Fair Credit Reporting Act; Catholic University Law Review* (1971) Volume 21, p. 201.

For all the above reasons, the defendant's motion for Judgment Notwithstanding the Verdict or in the alternative for a New Trial and the motion to Set Aside Jury's Answers to Special Interrogatories is hereby and the same DENIED. Plaintiff's Motion for Reasonable Attorney's Fees is hereby GRANTED.

However, a new trial is granted as to damages only unless the plaintiff, BARBARA COLLINS, within twenty (20) days after the service of this order, shall, in a writing filed with the Clerk of the United States District Court for the Eastern District of Michigan, Northern Division, remit either absolutely or under protest all the punitive damages awarded above the sum of Fifty Thousand ($50,000) Dollars; the award for general damages in the amount of Twenty One Thousand Seven Hundred Fifty ($21,750) Dollars to remain undisturbed.

The parties in accordance with the Court's prior ruling granting the motion to correct the judgment thereby ordering the separation of the punitive damage award from the actual damage award shall prepare an amended judgment not inconsistent with the Court's Memorandum Opinion rendered this day.

IT IS SO ORDERED.