805 F.2d 1258
 Thomas K. PINNER, Plaintiff-Appellee Cross-Appellant,
v.
James J. SCHMIDT, the Sherwin-Williams Company and Credit
Bureau Services-New Orleans, d/b/a Chilton
Corporation, Etc., et al.,
Defendants-Appellants Cross- Appellees.
 No. 85-3524.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 18, 1986.
Rehearing and Rehearing En Banc Denied Feb. 10, 1987.
 
 1
 Harry Rosenberg, Phelps, Dunbar, Marks, Claverie & Sims, Taryn S. Southon, New Orleans, La., for CBS.
 
 
 2
 Ralph R. Alexis, III, Porteous, Hankel, Johnson & Sarpy, New Orleans, La., for Schmidt and Sherwin-Williams.
 
 
 3
 Edward K. Pinner, Sr., New Orleans, La., for Pinner.
 
 
 4
 Appeals from the United States District Court for the Eastern District of Louisiana.
 
 
 5
 Before GEE and HILL, Circuit Judges, and HUNTER*, District Judge.
 
 EDWIN F. HUNTER, Jr., District Judge:
 
 6
 We review a judgment entered after a jury returned a verdict in the amount of $200,000 for violations of the Fair Credit Reporting Act, 15 U.S.C.A. Secs. 1681-1681t (West Supp.1986), damage to creditworthiness and reputation, and humiliation and mental distress. Defendants appeal from the denial of their motions for directed verdict, judgment notwithstanding the verdict, and a new trial or remittitur. Plaintiff appeals from the denial of his motion to amend the judgment to include an award of pre-judgment interest.I. BACKGROUND
 
 
 7
 Plaintiff-appellee, THOMAS K. PINNER, was formerly employed at a paint store owned by defendant-appellant SHERWIN-WILLIAMS. Defendant-appellant JAMES E. SCHMIDT managed the store. Pinner worked as an outside sales representative, selling Sherwin-Williams products to customers within his sales territory. During his tenure as an employee Pinner maintained a personal charge account with the company on which he could charge merchandise for himself or his family. Pinner would occasionally use this account to charge merchandise for his customers who had no account at the store of their own. Pinner nevertheless remained personally responsible for the account at all times.
 
 
 8
 As the district judge noted, "considerable tension developed between plaintiff and Schmidt, attributable to, inter alia, social and business rivalry." Plaintiff's brief describes plaintiff as a handsome young male and Schmidt as a middle aged, dominant male who sexually harassed several young female employees. Plaintiff argues "a relationship began to bloom between Pinner and one of the young female employees, the one defendant Schmidt wanted the most, the one defendant Schmidt had wanted since she was nine years old, the one Schmidt was obsessed with."[1]
 
 
 9
 The tension between Pinner and Schmidt led to a dispute over Pinner's personal charge account. Pinner believed that Schmidt had entered several fictitious charges on his account while Pinner was on vacation. As the working relationship soured in late 1980 Pinner left Sherwin-Williams with his personal charge account reflecting a $171.11 debit balance, a figure Pinner vigorously disputed. The evidence at trial tended to show that the correct balance was $121.71.
 
 
 10
 Sherwin-Williams is a subscriber of defendant-appellant C.B.M. of Louisiana, Inc. (Chilton), a credit reporting agency. Chilton receives various types of credit information from its subscribing companies, including the payment history of the companies' consumer debtors. Chilton then distributes its credit reports on consumers to other subscribing companies.
 
 
 11
 Sherwin-Williams executive Robert Stewart classified Pinner's account as delinquent in June, 1980, and again in January, 1981. This information was relayed to Chilton at these times and was included in Pinner's credit file. Sherwin-Williams made no mention of Pinner's objections to the amounts allegedly due. Stewart also reported the account as delinquent to a collection agency. On October 8, 1981, Pinner attempted to purchase tires on credit but was refused after the tire company routinely consulted Chilton for Pinner's credit history. It was at this point that Pinner learned of the delinquent account report. Pinner then requested and received a copy of his credit report from Chilton showing his account as delinquent. He also received materials which explained the procedure to follow if he disputed any part of the report. On January 11, 1982, Pinner's attorney sent a letter to Chilton notifying them that Pinner disputed the accuracy of the Sherwin-Williams charges. The letter clearly set forth the dispute between Pinner and Schmidt over the charge account and requested an investigation of the accuracy of the balance. Chilton employees contacted Sherwin-Williams and received verification from Schmidt that Pinner's account remained delinquent.
 
 
 12
 In February, 1982, Pinner was denied charge accounts by D.H. Holmes Company, Ltd., and Danny's Clothing Store. Both stores advised him in writing that the denials of credit were based on information they received from Chilton. Pinner again requested a copy of his credit report. The report he received, issued two months after his attorney's letter notifying Chilton that the account was disputed, still indicated that he had an undisputed delinquent account with Sherwin-Williams. In fact Chilton never amended Pinner's credit file to show the account balance was disputed. After suit was filed, however, Chilton noted in the file "Litigation Pending." The notation did not specify whether Pinner was plaintiff or defendant in the litigation.
 
 
 13
 Pinner sought recovery against Schmidt and Sherwin-Williams under La.Civ.Code Ann. art. 2315 (West Supp.1986) on several theories including damage to his creditworthiness and reputation and damages for humiliation and mental distress. Pinner also made claims against Sherwin-Williams for non-compliance with the Fair Credit Billing Act, 15 U.S.C.A. Secs. 1666-1666j (West Supp.1986), and against Chilton for both negligent and willful violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C.A. Secs. 1681n and 1681o (West Supp.1986).
 
 
 14
 At trial the district court dismissed Pinner's claims based on the credit report he obtained after attempting to buy tires. The court reasoned that Pinner's request was the first notice Chilton had received of Pinner's dispute with Sherwin-Williams. The court denied motions for directed verdicts from Schmidt and Sherwin-Williams. It also denied Chilton's motion for a directed verdict on the issue of punitive damages.
 
 
 15
 In response to a special interrogatory form, agreed upon by the parties, the jury returned a verdict finding that: (1) Schmidt was at fault in a way that caused damage to the plaintiff; (2) Sherwin-Williams was at fault in a way that caused damage to the plaintiff; (3) Chilton negligently failed to observe the requirements of the FCRA; (4) Chilton willfully failed to observe the requirements of the FCRA; (5) fair and adequate compensation to be awarded to the plaintiff for his actual damages was $100,000; and (6) punitive damages should be assessed in favor of plaintiff against Chilton in the amount of $100,000.
 
 
 16
 Although the claims were under both Louisiana and federal law, neither side requested the jury to apportion the judgment to specify what aspect of the award was attributable to each defendant. The trial judge entered a judgment holding Schmidt, Sherwin-Williams and Chilton liable in solido for the $100,000 compensatory damages.[2] Chilton alone was cast for $100,000 punitive damages. Each defendant filed a motion for judgment notwithstanding the verdict or alternatively for a new trial or a remittitur, 617 F.Supp. 342. The motions were denied. This appeal followed.
 
 II. CHILTON'S LIABILITY UNDER THE FCRA
 
 17
 Congress, in enacting the FCRA, sought to require consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit in a manner both fair and equitable to the consumer. 15 U.S.C.A. Sec. 1681(b). The legislative history of the FCRA indicates that its purpose is to protect an individual from inaccurate or arbitrary information about himself in a consumer report that is being used as a factor in determining the individual's eligibility for credit, insurance, or employment.
 
 
 18
 The facts of this case present two possible bases of liability under the FCRA. First, the FCRA provides that in preparing a consumer report a credit reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C.A. Sec. 1681e(b). This section imposes a duty of reasonable care in the preparation of a consumer report. Thompson v. San Antonio Retail Merchants Association, 682 F.2d 509, 513 (5th Cir.1982). Second, the FCRA imposes a duty upon reporting agencies to reinvestigate and to delete information found to be inaccurate or no longer verifiable once the consumer has protested the inclusion of the material. 15 U.S.C.A. Sec. 1681i.[3] A negligent violation of either of these sections subjects the credit reporting agency to liability for any actual damages sustained as a result of the violation, together with the costs of the action and a reasonable attorney's fee. 15 U.S.C.A. Sec. 1681o. A willful violation of either section subjects the agency to punitive damages as well. 15 U.S.C.A. Sec. 1681n.
 
 
 19
 Our review of Chilton's appeal from denials of motions for directed verdict and judgment notwithstanding the verdict is governed by the standard set forth by this court in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969):
 
 
 20
 On motions for directed verdict and for judgment notwithstanding the verdict the court should consider all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper.
 
 
 21
 411 F.2d at 374.
 
 
 22
 In assessing motions for new trial or remittitur the court is called upon to determine whether the verdict is excessive or contrary to the weight of evidence or has resulted in a miscarriage of justice. Bazile v. Bisso Marine Co., 606 F.2d 101, 105 (5th Cir.1979), cert. denied, 449 U.S. 829, 101 S.Ct. 94, 66 L.Ed.2d 33 (1980).
 
 
 23
 The record reveals evidence from which a jury could find a negligent violation of Sec. 1681i. Once Chilton received notice of the dispute over the Sherwin-Williams account from Pinner's attorney it was obligated to re-verify the accuracy of the delinquent entry. The letter informed Chilton of the Pinner-Schmidt dispute. It was unreasonable for Chilton to contact only Schmidt in its reinvestigation.
 
 
 24
 The Sixth Circuit has held that where a credit agency knew of a dispute between the consumer and creditors and where the consumer had complained about his consumer report, merely making two telephone calls to the creditors was insufficient to re-verify the information contained in the report. Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir.1982). Here, Chilton not only called the creditor to re-verify the report but consulted the man they knew to have had disagreements with Pinner in the past. Because of Schmidt's involvement, contacting only him was insufficient to re-verify the entry as Chilton was required to do under Sec. 1681i(a). If, as Chilton argues, there was no other authority to turn to to verify Pinner's account, Chilton should have deleted the information altogether, as is required by Sec. 1681i(a).
 
 
 25
 Turning to liability under Sec. 1681e(b), any person could easily have construed the notation "Litigation Pending" as an indication that the plaintiff was being sued by Sherwin-Williams, while the actual situation was the reverse. It would have been a simple matter to prevent this ambiguity, particularly in light of Chilton's knowledge of Pinner's dispute with Sherwin-Williams. As the court noted in the well-reasoned opinion of Alexander v. Moore & Associates, Inc., 553 F.Supp. 948, 952 (D.Hawaii 1982), quoted in Swoager v. Credit Bureau of Greater St. Petersburg, 608 F.Supp. 972, 977 (M.D.Fla.1985):
 
 
 26
 [Sec. 1681e(b) ] does not require that a consumer reporting agency follow reasonable procedures to assure simply that the consumer report be "accurate," but to assure "maximum possible accuracy." Otherwise it would seem that a consumer reporting agency could report that a person was "involved" in a credit card scam, and without regard to this section fail to report that he was in fact one of the victims of the scam. This result cannot have been contemplated under the Act.
 
 
 27
 608 F.Supp. at 977.
 
 
 28
 In determining liability under the FCRA "[T]he standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably prudent person would do under the circumstances." Thompson, 682 F.2d at 513. The evidence suffices to show that Chilton's procedures did not meet this requirement.
 
 
 29
 We have carefully considered each argument presented by Chilton with the premise that our assigned role is neither to re-try the case de novo nor to supplant the jury verdict so long as it is supported by substantial evidence. We find that the district court was eminently correct in denying Chilton's motions for directed verdict, judgment notwithstanding the verdict, or a new trial in regard to negligent violations of the FCRA.
 
 
 30
 We can see nothing in this fact situation, however, to justify a finding that Chilton willfully violated the Act. Punitive damage awards are permitted even without malice or evil motive, but the violation must have been willful under 15 U.S.C.A. Sec. 1681n. Fischl v. General Motors Acceptance Corporation, 708 F.2d 143 (5th Cir.1983). In each case where punitive damages have been allowed the defendant's conduct involved willful misrepresentations or concealments. In Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829 (8th Cir.1976) punitive damages were found to be proper when the agency sought at every step to block the consumer in his attempts to exercise his rights under the FCRA. There, the agency mislead the consumer about the contents of his credit file on three separate occasions. The reports it issued were "rife with innuendo, misstatement, and slander," and the agency did not reveal the contents of the credit file until the commencement of litigation. 528 F.2d at 834. In Collins v. Retail Credit Co., 410 F.Supp. 924 (E.D.Mich.1976) the agency's report contained statements about the plaintiff regarding her excessive drinking and "alleged instances of low moral character." 410 F.Supp. at 927. The agency also refused to disclose the contents of her file on at least one occasion. Id.
 
 
 31
 Chilton's conduct in this case in no way resembles the actions of the defendants in Millstone and Collins. Chilton promptly furnished Pinner with a copy of his credit report when he requested one. No effort was made to conceal anything and the information contained in the credit file was limited to the report on the delinquent Sherwin-Williams account. There was unrefuted testimony from Chilton employees establishing that they attempted to contact Pinner's attorney to relay that Chilton had reaffirmed the accuracy of his credit history. The telephone calls were not returned. Under the plain language and legislative history of Sec. 1681n, punitive damages are appropriate only where the violation has been willful. "Willful" is a word of many meanings--its construction often influenced by its context. But here there is simply nothing to even suggest that Chilton willfully set out to do Pinner harm. There is no evidence that they knowingly and intentionally committed an act in conscious disregard for the rights of others. The jury's award of punitive damages lacked any evidentiary support whatsoever. The facts and controlling case law mandate that the punitive damage award be vacated. It is.III. LIABILITY OF SCHMIDT AND SHERWIN-WILLIAMS
 
 
 32
 Since neither the jury nor the district court specified the legal theory upon which Schmidt and Sherwin-Williams were found liable, we examine the evidence under each of Pinner's claims.
 
 
 33
 Beginning with Sherwin-Williams, it is clear that it could not have been held liable for a violation of the Fair Credit Billing Act, 15 U.S.C.A. Secs. 1666-1666j (West Supp.1986). That Act provides a procedure through which a debtor can dispute statements containing a billing error issued by a creditor. To trigger the creditor's obligation to reinvestigate and verify the billing, the debtor must give written notice of the specific dispute within sixty days of receipt of the statement. 15 U.S.C.A. Sec. 1666(a). Pinner first notified Sherwin-Williams of his objection to his statement on March 13, 1981; he had received the statement on December 20, 1980. As the sixty day notice period begins to run when a disputed statement is first received, Pinner did not complain about the erroneous statement within the applicable time period and Sherwin-Williams' obligations under the Act were not triggered. See Gray v. American Express Co., 743 F.2d 10, 14-15 (D.C.Cir.1984).
 
 
 34
 Pinner's claim against Sherwin-Williams under La.Civ.Code Art. 2315 (West Supp.1986)[4] is essentially an action in defamation. To maintain an action in defamation, the following elements must be proved: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196, 198 (La.1980). Truth or substantial truth is a defense to a defamation suit. Batiste v. Guiteau, 413 So.2d 559 (La.App. 1st Cir.1982); Rosen v. Capital City Press, 314 So.2d 511 (La.App. 1st Cir.1975).
 
 
 35
 We find no support for Pinner's contention that Sherwin-Williams communicated false information to Chilton. Pinner's argument that the information was erroneous as to the amount of the debt is unconvincing. The record clearly shows that Pinner had a delinquent account with Sherwin-Williams in the amount of $121.71. A potential creditor checking with Chilton would only be concerned with whether or not the account was delinquent, not with whether the balance was $171.11 or $121.71. The evidence reveals that the information presented to the Credit Bureau by Sherwin-Williams and Schmidt that plaintiff owed money was substantially correct.
 
 
 36
 There appear to be three acts for which Schmidt could be found liable under Article 2315: (1) Schmidt's alleged statements to two ladies that Pinner was using illegal drugs, was wanted by the F.B.I., and that his life was in danger; (2) Schmidt's alleged placing of fictitious charges on Pinner's account; and (3) Schmidt's confirmation of Pinner's account as delinquent when Chilton checked with him following receipt of the letter from Pinner's attorney.
 
 
 37
 Any claim arising out of the first of these acts is barred by the time limitations of La.Civ.Code Ann. art. 3492 (West Supp.1986), which provides: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." The statements were made while Pinner was still an employee, which was prior to December, 1980. Any damage was sustained at that time. This lawsuit was not filed until March, 1983, over two years later.[5]
 
 
 38
 As to the fictitious entries on Pinner's account, the record contains no proof that they were made. The plaintiff introduced no evidence whatsoever to indicate that Sherwin-Williams' determination that Pinner owed them $121.71 was not correct. The $49.40 difference between $171.11 and $121.71 represents a credit for merchandise returned by one of Pinner's customers. At trial Sherwin-Williams admitted that Pinner was entitled to this credit. Every penny of the balance was thus accounted for.
 
 
 39
 Finally, as we have already noted, the information conveyed by Sherwin-Williams to Chilton regarding the status of Pinner's account was substantially correct. Schmidt simply confirmed the accuracy of that information when contacted by Chilton employees. Any action against him based on this act is thus defeated by the defense of substantial truth. Batiste, 413 So.2d 559.
 
 
 40
 Our review of the record reveals no evidence to support liability against Schmidt or Sherwin-Williams. We reverse the district court's denial of motions for judgment notwithstanding the verdict on the part of Schmidt and Sherwin-Williams.
 
 IV. DAMAGES
 
 41
 All appellants contend that the jury award for compensatory damages was grossly excessive and must be set aside. Even giving due deference to the fact finding role of the jury and the role of the trial court in declining to set aside the award, we must agree. "Surely, there must be an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law." Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 750 (2nd Cir.1984).
 
 
 42
 The plaintiff produced no evidence of any monetary damages. He testified that he was embarrassed by his denial of credit and sustained deep emotional distress because of Chilton's negligence. The evidence is far from sufficient to justify an award of $100,000. Despite the excessiveness of the award, however, we believe it is appropriate for us to order a conditional remittitur so as to avoid, if possible, a second trial. Peters v. T.G. & Y. Stores Company, 707 F.2d 227 (5th Cir.1983). Howell v. Marmpegaso Compania Naviera, S.A., 536 F.2d 1032 (5th Cir.1976). Our power to fix remittiturs is the same as that of the trial court. Shingleton v. Armor Velvet Corporation, 621 F.2d 180, 182 (5th Cir.1980). Moreover, as we said in Davis v. Safeway Stores, Inc., 532 F.2d 489, 491 n. 4 (5th Cir.1976), "an appellate court that finds a verdict excessive may give plaintiff the choice between a new trial and a remittitur in a specified amount." Accord, Stapleton v. Kawasaki Heavy Industries, Ltd., 608 F.2d 571, 574 at n. 7 (5th Cir.1979). In determining the amount of a remittitur, we are guided by the "maximum recovery rule" of this circuit which permits reduction of the verdict only to the maximum amount the jury could properly have awarded. Keyes v. Lauga, 635 F.2d 330 (5th Cir., 1981). There is no evidence to show that Pinner suffered any out-of-pocket expenses. Pinner testified that he was embarrassed and humiliated about the credit denials from several retail stores. This should support an award of some damages. However, the last time Pinner was denied credit was in February of 1982. This was after Pinner's attorney sent the letter advising Chilton that Pinner disputed his account but before Chilton noted "Litigation Pending" in his credit file. Pinner surely suffered a substantial measure of temporary public humiliation. Plaintiff readily concedes that he subsequently received a $150,000 SBA loan, a boat loan and a car loan and that his gross income from his own business in 1984 was more than a million dollars.
 
 
 43
 The jury award must be assigned to the more speculative damage elements of future embarrassment or loss of earning capacity or punishment. The amount is simply not "in the ball park" on the evidence in this record. See Thompson, 682 F.2d at 513-14; Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829 (8th Cir.1976); Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir.1982).
 
 
 44
 We do not regard these cases as setting a maximum on a plaintiff's permissible recovery for humiliation and embarrassment, but only as providing guidance as to levels of recovery that are realistic rather than fanciful. In light of the excessiveness of the compensatory damage award, the judgment against Chilton is reversed and remanded for a new trial on the issue of damages alone, unless plaintiff is willing to remit all compensatory damages in excess of $25,000. Plaintiff's decision is to be made within a time to be fixed by the district court on remand. The award is to bear interest from date of the original judgment entry. The attorney's fee award against Chilton remains. Chilton is to pay costs below and of this appeal.
 
 
 45
 In summary: As to Chilton, we reverse and render as to the punitive damage award; we affirm the judgment appealed from as to compensatory damages, except as to the amount of those damages. We find $25,000 to be the maximum possible recovery for those damages and order a conditional remittitur. We reverse as to Schmidt and Sherwin-Williams.
 
 
 46
 AFFIRMED IN PART, REVERSED IN PART AS TO CHILTON with conditional REMITTITUR. REVERSED AS TO SCHMIDT AND WILLIAMS.
 
 
 
 *
 District Judge of the Western District of Louisiana, sitting by designation
 
 
 [1]
 In their Motion in Limine, defendants anticipated the saturation of ad hominem sex revenge evidence which plaintiff might use to support his case. The trial judge denied the motion to exclude the evidence. It was permitted to show Schmidt's alleged motive--his hatred of Pinner. This evidence became a center piece of the trial as illustrated by this excerpt:
 "Defendant Schmidt fancied himself as a bull moose on a mountain with 30 cows being threatened by a younger bull."
 Schmidt categorically denied the harassment charges. Moreover one of two complaining young ladies who testified as to a sexual advance by Schmidt related that her knowledge of sex at that time was limited to "ideas from reading books." This was later specifically refuted by two male witnesses who testified as to their activities with her contemporaneously with the period at issue. Counsel for plaintiff in an eloquent closing argument referred to these two rebuttal witnesses as the "kiss and tell" boys.
 There are no empirical data or studies of psychological influence that can be brought to bear, at least with any clear focus on a specific case. But, our analysis of the entire record persuades us that the admission of this evidence may have triggered the damage awards.
 
 
 [2]
 In the absence of a demand by the parties that an issue be submitted to the jury and if such an issue is omitted, Fed.R.Civ.P. 49(a) allows the court to make its own findings on the omitted issue. See Taherzadeh v. Clements, 781 F.2d 1093, 1100 (5th Cir.1986)
 
 
 [3]
 Sec. 1681i(a) provides:
 If the completeness or accuracy of any item of information contained in his file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. If after such reinvestigation such information is found to be inaccurate or can no longer be verified, the consumer reporting agency shall promptly delete such information. The presence of contradictory information in the consumer's file does not in and of itself constitute reasonable grounds for believing the dispute is frivolous or irrelevant.
 
 
 [4]
 Article 2315 provides in pertinent part: "A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"
 
 
 [5]
 The remarks allegedly made were not broadcast and the young ladies and plaintiff remained intimate friends. The issue was not pressed upon us. There is no suggestion that these isolated remarks were the basis of any jury finding