**Robert Lee PARKER, Plaintiff,**

v.

**Robert PARKER, et al., Defendants.**

**No. CIV. A. 99–D–472–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 21, 2000.

Donna Coon Crooks, Daleville, AL, for plaintiff.

Robert Parker, Mulga, AL, pro se.

Joseph A. Fawal, Fawal & Spina, Birmingham, AL, Bruce S. Luckman, Mark E. Kogan, Timothy P. Creech, Satzberg, Trichon, Kogan & Wertheimer, PC, Philadelphia, PA, for Trans Union Corp.

Clyde C. Owen, Jr., Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, George A. Tonsmeire, Mobile, AL, for Gulf coast Credit Services, Inc.

John Michael Bowling, Friedman, Leak & Bloom, PC, Birmingham, AL, for J.C. Penney Co., Inc.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants Trans Union Corp. ("TU") and Gulf Coast Credit Services, Inc.'s ("Gulf Coast"), (collectively "Defendants") Motion For Summary Judgment ("Mot."), filed August 14, 2000, and Defendants' Memorandum Of Law In Support Of Motion For Summary Judgment ("Mem."), filed August 25, 2000.[1] On September 1, 2000, Plaintiff filed a Response To Motion For Summary Judgment ("Resp."). Defendants filed a Reply on September 8, 2000. After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendants' Motion For Summary Judgment is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 15 U.S.C. §§ 1681, *et seq.* (The Fair Credit Reporting Act). The Parties do not contest personal jurisdiction or venue.

---

1. Defendants filed a Revised Memorandum on August 25, 2000, which corrected formatting errors in the August 14, 2000 filing. However, the substance of the first Memorandum remained unchanged. To avoid any confusion, the court will cite to the corrected Revised Memorandum.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court construes the evidence and factual inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED. R.CIV.P. 56(e); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## III. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff Robert Lee Parker ("Plaintiff") commenced this action on May 11, 1999 against multiple defendants. Plaintiff alleges that, in 1980, an individual Defendant Robert Parker fraudulently opened an account with Credit First, N.A., using Plain-

tiff's credit information.[2] (Compl. ¶ 18.) Throughout the 1980s, Robert Parker, using Plaintiff's information, allegedly opened fraudulent accounts with First Card, Parisian, MBNA America, McRae's, Yielding's Inc., and J.C. Penney. (*Id.* ¶¶ 19–24.)

Plaintiff first became aware of the problems with his credit in late 1994 when he attempted to purchase an automobile at the Toyota dealership in Enterprise, Alabama. (Parker's Dep. at 11.) Plaintiff was initially told that his poor credit history would prevent financing the vehicle. (*Id.*) At that point, Plaintiff learned that there were several accounts listed on his credit reports that did not belong to him. (*Id.*) In the months that followed, Plaintiff alleges that he contacted "Defendant Creditors and Defendant Credit Bureaus and requested they correct all incorrect entries in the credit bureau files. Defendant Credit Bureaus failed and refused to make the necessary corrections, resulting in the denial of credit applied for by Plaintiff." (Compl. ¶ 25.)

Because of erroneous information on his credit report, Plaintiff alleges that he suffered "damage to his credit worthiness." (*Id.* ¶ 34.) Plaintiff cites a number of instances when he was denied credit allegedly because of incorrect information on his credit report. (Parker's Dep. at 97–99.) However, Defendants assert and Plaintiff concedes that only the instance when Plaintiff was denied credit by MBNA America in December 1997, is within the applicable two-year statute of limitations. (Mem. at 2; Resp. ¶ 1.)

In December 1997, Defendants allegedly provided a credit report to MBNA America which incorrectly indicated that Plaintiff had a J.C. Penney account which was "written off" as not collectable. (Compl. ¶ 64.) As a result, Plaintiff contends that he was refused credit, suffered mental distress, and endured damage to his reputation and credibility. (*Id.* ¶¶ 64–67.)

Subsequently, Plaintiff filed the instant Complaint on May 11, 1999 alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.,* as well as tort claims arising under state law. It is undisputed that Defendants are consumer reporting agencies within the meaning of 15 U.S.C. § 1681a(f) and, therefore, are subject to the FCRA.[3] Plaintiff brings two claims under the FCRA. First, Plaintiff alleges that Defendants violated § 1681e(b) of the FCRA. Section 1681e(b) imposes a duty on consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy when issuing credit reports. Here, Plaintiff alleges that Defendants did not have in place such reasonable procedures and subsequently issued an inaccurate report on Plaintiff to MBNA America. As a result, Plaintiff was denied credit. (Compl. ¶¶ 63–68.)

Second, Plaintiff contends that Defendants violated § 1681i of the FCRA, which imposes a duty on consumer reporting agencies to reinvestigate reported disputes. According to Plaintiff, he contacted Defendants and disputed information in September 1994, October 1996, and February 1998, and Defendants negligently or willfully failed to correct the adverse information. (*Id.* ¶¶ 77–82.)

---

**2.** Plaintiff originally named Robert Parker as a defendant in this action. On September 20, 1999, however, the court granted Plaintiff's Motion To Dismiss Defendant Robert Parker without prejudice.

**3.** "Consumer reporting agency" is defined as follows:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

Plaintiff also asserts state law claims of libel, slander, defamation, outrage, invasion of privacy, and negligence against Defendants.

## IV. DISCUSSION

Defendants raise the following five grounds in support of their Motion For Summary Judgment: (1) that the FCRA's two-year statute of limitations bars Plaintiff's claims arising on or before May 11, 1997 (Mem. at 6–7); (2) that Plaintiff's claims under 15 U.S.C. § 1681i fail as a matter of law because Plaintiff did not directly convey a dispute to Defendants and has no competent evidence that a third party conveyed a dispute to Defendants on his behalf (*id.* at 7–8; Reply at 2–3); (3) that Plaintiff has not presented a scintilla of evidence that Defendants failed to follow reasonable procedures to assure maximum possible accuracy under § 1681e(b) (Mem. at 8–11); (4) that Plaintiff cannot establish willful conduct by Defendants to justify the imposition of punitive damages (*id.* at 12–15); and (5) that Defendants are entitled to qualified immunity under § 1681h(e) on Plaintiff's state law claims. (*id.* at 15–16.)

The court agrees with Defendants as to four of their five contentions. The court finds that Plaintiff's claims arising prior to May 11, 1997 are barred by the statute of limitations. Likewise, the court agrees with the Defendants that Plaintiff cannot sustain his claims under § 1681i, or his claim for punitive damages. The court also finds that Defendants are entitled to immunity on Plaintiff's state law claims. However, the court disagrees with Defendants as to their third contention, above, that they are entitled to summary judgment on Plaintiff's claim under § 1681e(b).

### A. *The FCRA's Purpose And Provisions*

Congress enacted the FCRA in order to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...." 15 U.S.C. § 1681(b); *see also Yang v. Government Employees Ins. Co.,* 146 F.3d 1320, 1322 (11th Cir. 1998) ("The FCRA seeks to promote the credit reporting industry's responsible dissemination of accurate and relevant information."). Plaintiff seeks recovery under 15 U.S.C. §§ 1681e(b) and 1681i of the FCRA. Section 1681e(b) states that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Section 1681i sets out the procedures that a consumer reporting agency must follow when a consumer "notifies" it "directly" of inaccurate information contained in a consumer report. 15 U.S.C. § 1681i(a)(1). For example, § 1681i(a)(1)(A) states that a consumer reporting agency "shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file ... before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer." 15 U.S.C. § 1681i(a)(1)(A).

### B. *Statute Of Limitations*

■■ Defendants raise the affirmative defense of statute of limitations as to Plaintiff's claims brought under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i. (TU's Ans., "Ninth Affirmative Defense"; Gulf Coast's Ans., "Eleventh Affirmative Defense"; Mem. at 6–7.) Under the FCRA, "[a]n action to enforce any liability ... may be brought ... within two years from the date on which the liability arises...." 15 U.S.C. § 1681p. Under 15 U.S.C. § 1681e(b), liability arises when the consumer reporting agency issues an inaccurate consumer report. *See Barron v. Trans Union Corp.,* 82 F.Supp.2d 1288, 1293 (M.D.Ala.2000) (citing *Hyde v. Hibernia Nat'l Bank in Jefferson Parish,* 861 F.2d 446, 450 (5th Cir.1988) (holding that

"each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitation applies")). Under 15 U.S.C. § 1681i, liability arises when the consumer reporting agency "allegedly violate[s] its duty under the FCRA to reinvestigate." *Williams v. Colonial Bank,* 826 F.Supp. 415, 419 (M.D.Ala.1993), *aff'd,* 29 F.3d 641 (11th Cir.1994).

First, because Plaintiff's Complaint was filed on May 11, 1999, Defendants assert that Plaintiff's claims under 15 U.S.C. § 1681e(b), which arise on or before May 11, 1997 are barred by the statute of limitations. (Mem. at 7.) In response, Plaintiff concedes that summary judgment is appropriate as to these claims. (Resp.¶ 6.) Under § 1681p, it is clear that Plaintiff's claims arising from the consumer reports, which were disclosed to creditors more than two years prior to the filing of this lawsuit, are time barred. Accordingly, the court finds that summary judgment is due to be granted on Plaintiff's § 1681e(b) claims arising on or before May 11, 1997.

However, Plaintiff emphasizes that his § 1681e(b) claims arising on or after May 11, 1997, which are the claims related to the erroneous J.C. Penney account that appeared on the report issued to MBNA America, are not barred by the statute of limitations. The court agrees, and Defendants do not argue to the contrary. Thus, the court finds that Plaintiffs' § 1681e(b) claim, pertaining to the consumer report issued to MBNA America on December 12, 1997, is not time barred.

■ Second, Defendants assert that, with regard to Plaintiff's claim under 15 U.S.C. § 1681i, the alleged dispute communication by J.C. Penney to Defendants in October, 1996 should not be considered as notice because the communication occurred outside the applicable two-year period. (Mem. at 5.) Namely, Defendants refer to a letter to Plaintiff written by J.C. Penney and dated October 1996.[4] The letter indicates that J.C. Penney reported the inaccurate information contained in Plaintiff's report, i.e. a wrongly assigned J.C. Penney account, to Defendants on Plaintiff's behalf.[5] (Resp. at 35; J.C. Penney Ex. K; Reply at 2.) The court agrees with Defendants that the letter indicating J.C. Penney disputed inaccurate information on Plaintiff's behalf, even if admissible, is time barred.[6] Accordingly, the court finds that the statute of limitations bars consideration of the 1996 dispute communication by J.C. Penney, and summary judgment is due to be granted in favor of Defendants on Plaintiff's 15 U.S.C. § 1681i claims which rely upon the 1996

---

4. Plaintiff does not dispute that the letter was dated October 1996 or that J.C. Penney's communication likewise occurred in October 1996. (Compl.¶ 77.)

5. The letter reads, in pertinent part, as follows:

 Re: Account # 2170685263
 Dear ROBERT L. PARKER:
 Thank you for your recent inquiry regarding the credit bureau reporting status of the above listed JCPenney account number.
 We have researched our records and verified that the JCPenney charge account number printed above does not belong to you and should not be listed on your credit bureau file. We have notified the credit bureaus to delete this JCPenney entry from your credit files.
 We are sorry for the inconvenience and frustration this has caused you. If you have

any further questions or concerns, please do not hesitate to contact me.
 Sincerely,
 Becky L Fite
 (J.C. Penney's Ex. K.)

6. Defendants have filed a Motion To Strike the letter from J.C. Penney arguing that the letter is inadmissible hearsay which should not be considered by the court on this Motion For Summary Judgment. (Reply at 2–3.) The court, however, need not rule on Defendants' Motion To Strike. Because the letter is dated October 1996, even if it were admissible over a hearsay objection, it is time barred because it is evidence of a dispute communication that occurred outside the two-year statute of limitations. Accordingly, the court in a separate Order has denied this Motion as moot.

dispute communication by J.C. Penney as evidence of notice.

### C. Plaintiff's § 1681i Claim

Plaintiff asserts that Defendants are liable under § 1681i because Defendants failed to reinvestigate and correct erroneous information on Plaintiff's credit report. Defendants assert that Plaintiff cannot sustain a claim under 15 U.S.C. § 1681i because Plaintiff did not dispute the J.C. Penney account to TU or Gulf Coast. For the following reasons, the court agrees with Defendants.

■ Section 1681(a)(1)(A) provides, in pertinent part:

> If the completeness of accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file ... before the end of the 30-day period beginning on the date on which the agency receives notice of the dispute from the consumer.

15 U.S.C. § 1681i(a)(1)(A). Thus, consumer notification is a requirement for liability under § 1681i. *See Whelan v. Trans Union Credit Reporting Agency*, 862 F.Supp. 824, 833 (E.D.N.Y.1994) (noting that "the FCRA requires that the information be conveyed by the consumer directly to the credit reporting agency"); *see also Wiggins v. Equifax Services, Inc.*, 848 F.Supp. 213, 220 (D.D.C.1993) (In denying the consumer reporting agency's motion for summary judgment, the court noted that a disputed fact existed concerning whether the consumer complained directly to the consumer reporting agency, "a requirement for liability under § 1681i(a)."). For the following reasons, the court finds that Plaintiff cannot satisfy this requirement for liability.

Defendants contend that Plaintiff's only direct dispute communication was to Gulf Coast in 1995. (Mem. at 3; Defs.' Ex. E.) As discussed in Section B, *supra*, Defendants correctly assert that any communication in 1995 is barred by the statute of limitations.[7] In response to Defendants' argument, Plaintiff asserts that on two occasions after 1995 a dispute was lodged with Defendants concerning the erroneous account information on Plaintiff's credit report. First, Plaintiff points to J.C. Penney's letter to him in October 1996, wherein J.C. Penney stated that it had contacted Defendants about the erroneous information on Plaintiff's account. (Resp. ¶ 9; J.C. Penney's Ex. K; *see supra* Section B.) Plaintiff argues that J.C. Penney's communication with Defendants is sufficient to place Defendants on notice of the erroneous account information. (Resp.¶ 9); *see Lowry v. Credit Bureau, Inc. of Georgia*, 444 F.Supp. 541 (D.C.Ga.1978)(finding that, under the FCRA, a third party may enter a dispute on a consumer's behalf). However, as discussed in Section B, *supra*, any claim based upon the J.C. Penney letter is barred by the statute of limitations. Thus, Plaintiff cannot rely on the J.C. Penney letter to support a claim under 1681i.[8]

7. Regardless of the time bar, Defendants point out that Plaintiff's 1995 dispute did not even involve a dispute concerning the J.C. Penney account, which at the time also appeared on Plaintiff's credit report. Rather, Plaintiff's dispute concerned other erroneous information appearing on Plaintiff's credit report, which Defendants removed from Plaintiff's credit report.

8. In his Complaint, Plaintiff asserts that he disputed information in September 1994. (Compl.¶ 77.) Defendants contend their first, and only, contact with Plaintiff was in 1995. (Mem. at 3.) The court finds that, in this case, the conflicting dates are of no consequence because whether Plaintiff disputed information in 1994 or 1995, either instance would be outside the statute of limitations. Any communication prior to May 11, 1997 is beyond the two-year statute of limitations. Thus, the court need not independently analyze Plaintiff's alleged dispute communication in 1994.

■ Second, Plaintiff indicates that he disputed information in February 1998. (Compl.¶ 78.) However, because Plaintiff has not presented evidence of a dispute communication in 1998, the court finds that Plaintiff's claim must fail.

In opposing summary judgment, Plaintiff cannot rest on his pleadings. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing FED. R.CIV.P. 56(e)). In other words,

> [t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.

*Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995).

In his brief, Plaintiff only refers to the fact that a third party, which the court assumes is J.C. Penney, can report a dispute on a consumer's behalf. (Resp.¶ 9.) Defendants assert that the communication in 1998 was solely to request file disclosures, not to dispute information. (Mem. at 3; Defs.' Ex. C & D.) Because Plaintiff has failed to produce any evidence of a dispute communication in 1998 and has failed to challenge Defendants' characterization of Plaintiff's 1998 communication as a request for information, the court finds that any communication that may have occurred in 1998 fails to qualify as notice for the purposes of Plaintiff's § 1681i claim. Accordingly, the court finds that Plaintiff cannot satisfy an essential element of his § 1681i claim. Thus, Defendants' Motion For Summary Judgment as to the § 1681i claim is due to be granted.

### D. *Plaintiff's § 1681e(b) Claim*

Plaintiff asserts that Defendants failed to "follow reasonable procedures to ensure maximum possible accuracy" in the preparation and reporting of credit information, in violation of § 1681e(b). To establish a "prima facie violation" under 15 U.S.C. § 1681e(b),

> a consumer must present evidence tending to show that a credit reporting agency prepared a report containing "inaccurate" information. If he [or she] fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation ..., and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency. The Act, however, does not make reporting agencies strictly liable for all inaccuracies. The agency can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures, which will be a jury question in the overwhelming majority of cases. Thus, prior to sending a [§ 1681e(b) ] claim to the jury, a credit reporting agency can usually prevail only if a court finds, as a matter of law, that a credit report was "accurate."

*Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991) (internal footnotes omitted); *see also Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir.1995).

■ Plaintiff has satisfied his initial burden because Plaintiff denies owning the charged off J.C. Penney account reported by Defendants in his consumer reports, and Defendants do not dispute that the J.C. Penney account does not belong to Plaintiff. Accordingly, the relevant question becomes whether Defendants' procedures for preparing credit reports are reasonable. The standard for determining the adequacy of consumer reporting agency procedures is "what a reasonably prudent person would do under the circumstances." *Thompson v. San Antonio Retail Merchants Association,* 682

F.2d 509, 513 (5th Cir.1982). Moreover, evaluating the reasonableness of a consumer reporting agency's procedures "involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy. Under this standard a plaintiff need not introduce direct evidence of unreasonableness of procedures: In certain instances, inaccurate credit reports by themselves can fairly be read as evidencing unreasonable procedures...." *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51–52 (D.C.Cir.1984) (internal citations omitted).

Defendants assert that they use a system known as the METRO format, which is the industry-wide standard for the reporting of credit information. (Mem. at 11.) Further, Defendants assert that because Plaintiff failed to report the J.C. Penney account as inaccurate and Defendants had no reason to know J.C. Penney was not a reliable source, a reasonable jury could not conclude that Defendants failed to follow reasonable procedures. (*id.* at 8–11.) The court disagrees.

 Narrowly construing the Eleventh Circuit's approach to evaluating reasonable procedures, "a plaintiff may present his case to the jury on the issue of reasonable procedures merely by showing an inaccuracy in the consumer report and nothing more ..." *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 965 (interpreting the Eleventh Circuit's decision in *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir.1991)). Broadly construing the Eleventh Circuit's approach, "once a plaintiff demonstrates inaccuracies in a credit report, the burden shifts to the defendant to prove as an affirmative defense the presence of reasonable procedures." *Id.* In other words, on a motion for summary judgment on a § 1681e(b) claim, "a credit reporting agency can usually prevail only if a court finds, as a matter of law, that a credit report was 'accurate.'" *Cahlin*, 936 F.2d at 1156. Thus, in the instant case, where Plaintiff's report was undisputedly incorrect, the court finds that whether Defendants had in place reasonable procedures to report information and detect disparities is a question for the jury, not the court. *Id.* Accordingly, the court finds that summary judgment is due to be denied as to Plaintiff's claim under § 1681e(b).

### E. *Punitive Damages*

Defendants claim that they are entitled to summary judgment on the issue of punitive damages because no evidence exists that Defendants acted willfully. (Mem. at 12.) However, Plaintiff, again relying on the 1996 letter from J.C. Penney indicating that Defendants were notified of the inaccuracy, contends that the evidence demonstrates that Defendants, at the very least, acted with "reckless indifference to the [P]laintiff's rights" under the FCRA. (Resp.¶ 70.) For the reasons that follow, the court finds that Defendants are entitled to summary judgment on the issue of punitive damages.

 A consumer is entitled to punitive damages only when the evidence demonstrates that the consumer reporting agency "willfully fail[ed]" to follow the FCRA's requirements. 15 U.S.C. § 1681n. If a consumer reporting agency commits a "willful violation" under either 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i, punitive damages may be imposed. *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986). As explained in *Stevenson v. TRW, Inc.*, 987 F.2d 288 (5th Cir.1993), "[t]o be found in willful noncompliance, a defendant must have 'knowingly and intentionally committed an act in conscious disregard for the rights of others.' Although malice or evil motive is not necessary to satisfy § 1681n, there must have been a willful violation." *Id.* at 294 (citations omitted).

In *Pinner*, the Fifth Circuit vacated the jury's award of punitive damages. In that case, the court held that the consumer reporting agency had not acted willfully despite its failure to investigate adequately and correct inaccurate information. *Pin-*

*ner*, 805 F.2d at 1262–63. The Court stated:

> In each case where punitive damages have been allowed the defendant's conduct involved willful misrepresentations or concealment.
>
> \* \* \* \* \* \*
>
> [Defendant's] conduct in this case in no way resembles [such] actions ... [Defendant] promptly furnished plaintiff with a copy of his credit report when he requested one. No effort was made to conceal anything ... Under the plain language and legislative history of § 1681n, punitive damages are appropriate only where the violation has been willful ... But here there is simply nothing to even suggest that [Defendant] willfully set out to do [Plaintiff] harm. There is no evidence that they knowingly and intentionally committed an act in conscious disregard for the rights of others ... The facts and controlling law mandate that the punitive damage award be vacated.

*Id.* at 1263. (citations omitted)

While at least one court has found that a consumer reporting agency's haphazardness in verifying consumer credit information was sufficient to support an award of punitive damages, there were unique circumstances in that case which clearly warranted punitive damages. *See Collins v. Retail Credit Co.*, 410 F.Supp. 924, 932 & 933–34 (E.D.Mich.1976). In *Collins,* the consumer reporting agency falsely impugned the consumer's moral character and labeled her an excessive drinker. 410 F.Supp. at 927. When she went to the agency's office, the defendant flatly refused to show the plaintiff her entire report and concealed portions of the report referring to her excessive drinking and low morals. *Id.* at 931. The agency's procedures and techniques for reporting, investigating, and particularly disclosing, or rather failing to disclose, demonstrate the type of conduct that warrants punitive damages. For the following reasons, the court finds that, even applying the most

generous definition of "willful," there is not evidence of a willful violation by Defendants that justifies punitive damages.

■ In the instant case, there is no evidence of "willful misrepresentations or concealment." *Pinner,* 805 F.2d at 1263; *Stevenson v. TRW, Inc.,* 987 F.2d 288, 294 (5th Cir.1993). Defendants promptly furnished Plaintiff with his file disclosure upon request, and did not conceal any information contained therein from Plaintiff. (Mem. at 15; Compl. ¶ 76.) Unlike in *Collins, supra,* there was no attempt by Defendants to willfully conceal derogatory information. 410 F.Supp. at 931. Furthermore, there is no evidence that Defendants "knowingly and intentionally" acted with "conscious disregard" for Plaintiff's rights. *Philbin,* 101 F.3d at 970. All information disputed by Plaintiff in 1995 was deleted and did not reappear. (Defs.' Ex. E; Parker's Dep. at 145–46.) Plaintiff has failed to produce evidence that Defendants had notice of inaccurate information, i.e. the J.C. Penney account, and intentionally or recklessly disregarded their duty to reinvestigate. In sum, the court finds that Plaintiff has failed to produce evidence of a willful violation of the FCRA sufficient to warrant punitive damages. Accordingly, the court finds that Defendants are entitled to summary judgment on Plaintiff's claims for punitive damages under the FCRA.

### F. *Plaintiff's State Law Claims*

Plaintiff has asserted state law claims of libel, slander, defamation, outrage, invasion of privacy, and negligence, against Defendants. The FCRA provides qualified immunity for consumer reporting agencies for claims in the nature of defamation, invasion of privacy, and negligence, unless the consumer shows that the false information was furnished with "malice or willful intent to injure." *See* 15 U.S.C. § 1681h(e); *see also Thornton v. Equifax, Inc.,* 619 F.2d 700 (8th Cir.1980). In the instant case, Defendants assert that

they are entitled to qualified immunity against Plaintiff's state law claims under FCRA § 1681h(e).[9] For the following reasons, the court agrees.

 Plaintiff has failed to produce evidence which indicates Defendants acted "with malice or willful intent to injure" Plaintiff. 15 U.S.C. § 1681h(e). The term "malice," as it is used in the applicable provision of the FCRA, has been given the same interpretation that the term is given in libel litigation for summary judgment purposes. *See Wiggins v. Equifax Services, Inc.*, 848 F.Supp. 213, 223 (D.D.C. 1993); *see also Thornton*, 619 F.2d at 705. Thus, to show "malice" a plaintiff must show that the speaker, when he made the statement, "either knew the statement was false or acted in reckless disregard for its truth or falsity." *Wiggins*, 848 F.Supp. at 223 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). "Reckless disregard, in turn, requires evidence that the speaker entertained actual doubt about the truth of the statement." *Id.* Here, Defendants have indicated that they complied with Plaintiff's request to remove inaccurate information in 1995, and Plaintiff has conceded that the three accounts he reported were in fact removed. (Mem. at 15.) Defendants allege that although the J.C. Penney account appeared on Plaintiff's credit report in 1995, Plaintiff did not report the account as inaccurate information. (*Id.* at 4.) Indeed, Plaintiff has conceded that he, himself, never disputed the J.C. Penney account to Defendants. (*Id.* at 3–4; Parker's Dep. at 145–46.) Further, Plaintiff has failed to present any admissible evidence which indicates that Defendants received any type of notice concerning the incorrect J.C. Penney account. Accordingly, the court finds that Plaintiff has failed

to present evidence that Defendants, when they supplied information to MBNA, either knew that the J.C. Penney account did not belong to Plaintiff or had actual doubt about whether the account belonged to Plaintiff. Put another way, Plaintiff has failed to present evidence that Defendants acted with malice or willful intent to injure, as is required to overcome the qualified immunity provided by § 1681h(e). Thus, the court finds that Defendants are entitled to summary judgment for Plaintiff's claims of libel, slander, defamation, invasion of privacy, and negligence.

The provision granting credit reporting agencies qualified immunity does not explicitly provide for qualified immunity as to claims of outrage. The court, however, need not decide whether § 1681h(e) immunity exists for such claims because the court finds that Plaintiff's outrage claim fails on the merits. As defined by Alabama case law, the elements of outrage are:

(1) The actor intended to inflict emotional distress or the actor knew or should have known that emotional distress was likely to result from his conduct;

(2) The conduct was extreme and outrageous;

(3) The resulting distress was severe.

*Perkins v. Dean*, 570 So.2d 1217, 1219 (Ala.1990). In the instant case, even if immunity does not apply to outrage claims, the court finds that Plaintiff has failed to produce evidence of the first and second elements.

 As to the first element, there is no evidence which indicates that Defendants intended to inflict emotional distress upon Plaintiff, or that Defendants should have known that emotional distress would result

---

**9.** The relevant provision states in pertinent part:

Except as provided in section 1681n and 1681o of this title, no consumer may bring an action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

from their conduct. Defendants believed that they had deleted all incorrect information from Plaintiff's account in 1995, and that they were in fact reporting completely accurate information to MBNA America in 1997. As discussed in the sections regarding punitive damages and immunity, *supra*, Plaintiff has failed to present evidence that Defendants knew, or should have known, the J.C. Penney account did not belong to Plaintiff and reported it anyway. Likewise, Plaintiff has failed to produce evidence that Defendants refused to reinvestigate and remove inaccurate information after inaccuracies were reported. Moreover, Plaintiff has indicated that Defendants cooperated with his requests for reports and his direct requests for corrections. Accordingly, the court finds that Defendants did not intend to inflict emotional distress upon Plaintiff, and have not engaged in the type of conduct from which they should have known emotional distress would result. Therefore, the court finds that Plaintiff cannot satisfy this element of his outrage claim.

■ As to the second element, Plaintiff has failed to produce evidence which indicates that Defendants' conduct was "extreme and outrageous." *Perkins*, 570 So.2d at 1219. While the court is sympathetic to Plaintiff's plight, the presence of inaccurate information on a credit report, in the absence of any evidence the inaccuracy was reported or was intentional, hardly qualifies as conduct "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency." *Boykin v. Magnolia Bay, Inc.*, 570 So.2d 639, 642–43 (Ala.1990). Thus, the court finds that there is no jury question as to Plaintiff's outrage claim. Accordingly, the court finds that Defendants are entitled to summary judgment on said claim.

## V. ORDER

For the foregoing reasons it is CONSIDERED and ORDERED that Defendants' Motion For Summary Judgment be and the same is hereby GRANTED in part and DENIED in part as follows:

(1) Defendants' Motion For Summary Judgment based on the affirmative defense of statute of limitations be and the same is hereby GRANTED to the extent that Plaintiff is barred from pursuing his FCRA claims with liabilities arising on or before May 11, 1997;

(2) Defendant's Motion For Summary Judgment on Plaintiffs' claim under 15 U.S.C. § 1681i on the ground Plaintiff failed to notify Defendants of the error be and the same is hereby GRANTED;

(3) Defendants' Motion For Summary Judgment on Plaintiff's claim under 15 U.S.C. § 1681e(b) be and the same is hereby DENIED;

(4) Defendants' Motion For Summary Judgment on Plaintiff's request for punitive damages be and the same is hereby GRANTED;

(5) Defendants' Motion For Summary Judgment on Plaintiff's state law claims of libel, slander, defamation, invasion of privacy, and negligence, on the basis of qualified immunity, be and the same is hereby GRANTED; and

(6) Defendant's Motion For Summary Judgment on Plaintiff's claim of outrage be and the same is hereby GRANTED.